Sutliff, J.
It is difficult, from the structure of the petition, to determine upon what precise ground its merits, in the mind of the pleader, rested. It does not seem to have been regarded by the draftsman as simply a case for specific performance of a. contract, for the nonperformance of which no adequate remedy could be had at- law, and so to be regarded as a proper case for relief in chancery. Nor does the petition seem to present and rest exclusively upon a case of the wrongful appropriation of personal property, as personal assets which had, by the intestate in his lifetime, been directed to be converted into real estate. And yet this is the only ground, expressed in the petition, upon which the heirs would seem to have any right to ask the relief prayed for. The pleader seems to have attached some importance to the extraneous circumstances set forth in the petition; the facts of the intestate having left no children; that he had been but a short time married; that no part of his property was brought to him by his wife; and that his personal estate amounted to some $12,000, *453 while his real estate did not exceed some $3,000. But we cannot regard these matters, although set forth in the petition and made to appear among the facts of the case, as at all affecting the rights of the respective parties, except as they may in some particulars tend to show the object and purposes of the contemplated improvements.
It is a well understood principle of law, that legal assets do not comprehend all that is included by the words personal property. Personal chattels and money are not unfrequently to be regarded and treated as real estate. Lord Thurlow, in remarking upon this subject, in the case of Fletcher v. Ashburner, 1 Bro. C. C. 497, observed “ that nothing was better established .than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered that species of property into which they are directed to be converted; and this in whatever manner the direction is given, whether by will, by way of contract, marriage articles, settlement, or otherwise; and whether the money is actually deposited or only covenanted to be paid, whether the land is actually conveyed or only agreed to be conveyed, the owner of the fund, or the contracting parties, may make land money, or money land. The cases establish this rule universally.” The same principle has, ever since, been generally recognized in England and in this country.
But in the application of the rule, the cases where the intentional change of personal property into real exists, and is expressed as the evident object of the owner of the fund, must always be distinguished from an intended change of personal into real property, as merely incident to some other object. If, for instance, an intestate has concluded to invest his money in town property, as a profitable investment, and, in carrying out this clearly expressed intention, has entered into a contract with one person for the purchase of a lot, and has also made a *454 definite contract with another person for the erection of a store-house thereon, the completion of which would be necessary to render remunerative the investment, the materials, furnished under the contract by the contractor’, and the money necessary for the completion of the house, might be as properly regarded real estate as the money invested, and still to be paid, as the agreed purchase price of the lot. The completion of the contract, for a judicious improvement of the lot in such a case, is as necessary to attain the object of the proprietor of the fund, existing in his own mind at the time of making the contracts for the purchase and the improvements, as is the payment of the purchase money to obtain a perfect title. And the object remains as evident, after the death of the contractor in such a case, as if the contract had been with only the owner of the lot of ground for its purchase, and the erection thereon of the store-house. The object, in either case, would appear very evidently to have been an investment of personal property in real estate as an investment; and this object remaining, after the decease of the intestate, ought to be respected as a change of the character of his personal property to that extent, as clearly expressed by such conti’act, as it would have been if expressed by will or testament. But if the intestate, entertaining a particular regard for some dependent friend, had even entered into a definite contract with some one to build, at a large expense, a house or studio for that friend, and also to extend a superintendence over it during the life of the beneficiary, it could not be supposed — the friend also having decased shortly after the 'intestate and before the performance of the contract — that the administrator’, after the termination of the object and purposes of the contract, ought to be required to see the same specifically performed. It could not be supposed that, under such circumstances, the intestate Would desire a completion of the contract. The purpose having failed for which the building was to be constructed, the condition would seem to have failed *455 upon, which, the direction by the intestate for the investment, so expressed by the contract, depended.
The distinction here expressed is to be found, I think, generally recognized in the cases presenting the subject. In the case of Ripley v. Watterworth, 7 Ves. Rep. 425, Lord Chancellor Eldon, in giving his opinion, says: “ There is an obvious difference from all the cases, which establish this general principle, that where a person dealing upon his own property, only has directed a conversion for a particular special purpose, or out and out, but the produce to be applied to a particular purpose, when the purpose fails the intention fails; and this court l’egards him as not having directed the conversion.”
As a general rule, the personal representative of the testator or intestate may, in his discretion, perform or rescind any personal contract, made by the deceased, imposing any liability or duty upon himself, for the best interest of the estate, subject however to the approval of the court.
To the administrator belongs the control. of the legal assets, and the duty of collecting the claims and discharging the liabilities of the intestate. To the heir, in his representative capacity, belongs the control of the real estate, subject to the rights of the widow, whether the title to the real estate be a legal or only an equitable title. In this division of property between the personal and real representatives of the intestate, equitable interests in lands, held by contracts of purchase, are regarded in the nature of equities of redemption. The right to the lands belongs to the heir, and the debt subsisting for the purchase money, if the same was obligatory upon the intestate in his lifetime as a debt, must be paid by his administrator from the legal assets, if sufficient, although the result may greatly diminish, or entirely exhaust the personal estate of the deceased. And this necessarily results from the discharge of his duty, by the administrator, of paying the debts of the intestate.
*456 Erom the foregoing remarks, and the statement of the facts of this case, the real question upon which the merits of this case depends, is solely as to the coversion of so much of his personal property into real by the intestate as is necessary to perfect the contemplated improvements. If the intestate, by his oWn action, and by the contracts made in his lifetime, in relation to the improvements, has left evidence of having purposed and directed to be set apart and invested a certain amount of his personal property, or such an amount of his personal property as was sufficient to perfect certain improvements of his real estate as an investment in real estate, and not merely as incident to some other purpose which no longer exists, such amount of the personal estate should, doubtless, be regarded as real assets, and would belong, not to the personal, but to the real representatives of the intestate. But if it only appears that the contemplated appropriation of his personal to the improvement of his real estate by the intestate, was merely incident to an object and purpose which no longer exists, and not as an investment in real estate, as the object and purpose of the appropriation, in such a case, the direction of the intestate for the conversion, should be regarded as having been conditional, and to have ceased upon the termination of the object and purposes.
Now, the proof in this case shows very clearly that the intestate had commenced building upon and improving a town lot as a homestead and residence for himself. The improvement was evidently designed, and was being made by the intestate, not as a judicious investment in real estate, but only for his own personal gratification and convenience, and for the purpose of constructing and^ preparing for himself a more pleasant residence. By his death, the object and purposes of those improvements, designed for his own enjoyment, have terminatedand the completion of the improvements, it appears, would be attended with much pecuniary sacrifice and loss to the estate.
The proof shows, that to construct such improvements *457 upon the lot as the intestate would probably have constructed, or those of equal cost, would be attended with a sacrifice and pecuniary loss to the estate of probably not less than $2,000; while the entire amount paid for rescinding the contracts, so far as they have been made, will not exceed $200.
There is, then, no equity upon which the complainants can stand to ask a specific performance of the contracts.
But the proof does not in fact present such contracts for the contemplated improvements, as could be ordered to be specifically performed, even upon the application of a party to the contract.
The contracts are not in writing; they are vague and uncertain in their terms. The proof shows that the intestate had commenced building upon his lot of ground, and contemplated making extensive improvements thereon, for a convenient and pleasant residence for himself and family. He had procured certain materials, and engaged such other materials, to be delivered in future, as he might need for perfecting the improvements. He had also engaged the services of certain workmen, and had given them assurances that he should want their services for some time in future, in constructing the contemplated improvements. But it seems to have been understood by all the workmen, that the work was to be done under the direction of the intestate, and subject to such alterations and additions as he might from time to time suggest. Indeed, the work could not be properly said to be under contract. The case seems to be quite analogous to that presented by the affairs of entei’prising business men generally, who die, unexpectedly, while in full pursuit of their enterprises. The merchant, the manufacturer, or farmer, who dies suddenly while carrying on an extensive business, will each usually be found, doubtless, to have made similar arrangements for the prosecution of his business for a length of time in future. They may have employed, in a similar manner, operatives, who may have received encouragement, or an *458 assurance of employment for a year, or even longer time, in future. But in each and all of these cases, it would be an unheard of claim on the part of the heir, or even the employees, that there should be a specific performance m such cases, by the administrator continuing to carry on to their completion the business operations of the intestate.
The general rule is, that for the breach of a contract, the appropriate remedy is, at law, in the recovery of adequate damages. Specific performance of the contract is the exception to the rule. But the facts of this case by no means constitute such exception. The proof shows very clearly that the intestate neither purposed nor directed a conversion of his personal estate into real, as an investment in real estate, and for that purpose, but only as a mere incident to the object of furnishing himself a residence; and that such object and purpose have terminated, and that, therefore, the purpose and directions of the intestate, in his lifetime, to so appropriate and convert his-personal property, should also be held to have terminated.
The bill must, therefore, be dismissed, at the costs of the complainants.
Swan, C. J., and Brinkerhoff, Scott and Peck, JJ., concurred.